**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Reginald L. SMITH, Defendant-Appellant.**

**No. 75–2032.**

United States Court of Appeals, Seventh Circuit.

Argued June 2, 1976.

Decided Oct. 7, 1976.

Robert S. Bailey, Chicago, Ill., for defendant-appellant.

Samuel K. Skinner, U.S. Atty., Michael D. Groark, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before TONE and WOOD, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

On 15 May 1975, a four-count indictment was returned against the appellant in the United States District Court for the Northern District of Illinois, Eastern Division. Count I of that indictment charged appellant with possession of stolen government property, in violation of 18 U.S.C. § 641.[1] Count II charged him with possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d).[2] Count III charged appellant with the unauthorized transportation of a machine gun in interstate commerce from Tampa, Florida, to Chicago, Illinois, in violation of 18 U.S.C. § 922(a)(4).[3] Finally, Count IV charged him with delivery of a firearm and ammunition to a common carrier for interstate transportation, in violation of 18 U.S.C. § 922(e).[4] These charges arose

* Senior District Judge Robert A. Grant of the United States District Court for the Northern District of Indiana is sitting by designation.

1. 18 U.S.C. § 641 reads as follows:

§ 641. Public money, property or records

Whoever embezzles steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

. . . . .

2. 26 U.S.C. § 5861(d) reads as follows:

§ 5861. Prohibited acts

It shall be unlawful for any person—

(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; . . . .

3. 18 U.S.C. § 922(a)(4) reads as follows:

§ 922. Unlawful acts

(a) It shall be unlawful—

(4) for any person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, to transport in interstate or foreign commerce any destructive device, machine-gun (as defined in section 5845 of the Internal Revenue Code of 1954), short-barreled shotgun, or short-barreled rifle, except as specifically authorized by the Secretary consistent with public safety and necessity; . . . .

4. 18 U.S.C. § 922(e) reads as follows:

from the discovery at the Chicago Greyhound Terminal of a stolen M-16 A-1 machine gun and 204 rounds of ammunition in appellant's possession within a suitcase that had been transported by Greyhound bus from Chicago to Tampa, and returned via Delta Airlines from Florida to Chicago. After a trial by jury, appellant was found guilty on all four counts of the indictment. Following imposition of sentence, appellant filed this appeal.

In support of his contention here that his conviction should be reversed, appellant asserts at the outset that the evidence adduced at trial was insufficient to support the verdict on all of the counts in respect to his knowledge that the suitcase he was carrying contained the rifle. He argues that although the record demonstrates that he was indeed carrying the suitcase which contained the weapon, there was nothing in the record to demonstrate his knowledge of the contents of the suitcase. He contends that there were other deficiencies in the proof that require reversal. In this respect, it is argued that the essential element of knowledge of the stolen nature of the gun in Count I was not proved; that the transportation of the weapon from Tampa to Chicago was not proved as charged in Count III; and that delivery of the gun to Greyhound was not proved as charged in Count IV. Second, appellant maintains that it was error for the court below to deprive him of the testimony of one Arnold Wilson by denying his motion for use immunity for Wilson. For the above-stated reasons, appellant urges this court to reverse his conviction in the district court.

In response to the sufficiency of the evidence issue, appellee asserts that there is substantial evidence in the record from which the jury could have reasonably concluded that appellant knew of the presence of the M-16 in the suitcase which he possessed. This is adequately demonstrated, says, appellee, by the testimony of Mary May, a Greyhound employee in Tampa, and by appellant's attempt to flee F.B.I. agents in Chicago upon recovering the luggage in which the weapon was stored. Further, appellee argues herein that the evidence was equally sufficient to prove that appellant had the requisite knowledge that the gun was stolen, and that appellant's acts were sufficient to prove that he transported the weapon in interstate commerce. As to the issue of immunity of the witness Wilson, appellee contends that appellant's argument in this regard is without merit, as the matter of immunity is one that is within the sole discretion of the government. In this respect, it is argued that it would have been inappropriate and improper for the trial court to command appellee to exercise its power to grant immunity. In any event, appellee claims that it was Wilson's counsel, not the government, who advised him not to testify. Finally, appellee submits that the court's denial of the immunity request herein did not result in an affirmative withholding of material evidence, as Wilson was available to testify, but chose not to do so. In this context, then, appellee claims that appellant did not have a constitutional right to have immunity conferred upon the witness Wilson. For these reasons, this court is urged by appellee to affirm appellant's conviction in the court below.

Based on our careful review of the entire record in this case, and for the reasons which follow, we affirm the judgment of conviction in the district court.

Initially we see no merit in appellant's allegations regarding the sufficiency

(e) It shall be unlawful for any person knowingly to deliver or cause to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce, to persons other than licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, any package or other container in which there is any firearm or ammunition without written notice to the carrier that such firearm or ammunition is being transported or shipped; except that any passenger who owns or legally possesses a firearm or ammunition being transported aboard any common or contract carrier for movement with the passenger in interstate or foreign commerce may deliver said firearm or ammunition into the custody of the pilot, captain, conductor or operator of such common or contract carrier for the duration of the trip without violating any of the provisions of this chapter.

of the evidence. It is quite clear to this court from an examination of the trial testimony that the evidence presented was certainly strong enough for the jury to conclude, as it did, that appellant knew that the gun was contained in the suitcase which was transported to Tampa and which he subsequently claimed at the baggage counter in Chicago; that the weapon was stolen; and that it was appellant who was the motivating force in causing the gun to be delivered to Greyhound for interstate transportation. From our review of the testimony of Greyhound employee Mary May, for example, it is apparent that appellant had the requisite knowledge of the contents of the suitcase in which the gun was contained. Miss May testified at trial about the events and circumstances surrounding appellant's efforts in Tampa to recover the suitcase which contained the weapon. She indicated that appellant's interest in his luggage was not casual. In fact, she stated that appellant was "very intense" and "very concerned about the baggage". Further, she stated that appellant presented her with two baggage claim checks for the luggage that was missing.[5] These were the identical claim checks that appellant later presented in Chicago to recover the two parcels of luggage, one of which contained the weapon. Additional evidence in support of appellant's knowledge about the contents of the suitcase containing the weapon was appellant's attempt to flee agents of the F.B.I. at the Greyhound Terminal in Chicago after having claimed his luggage. The testimony of three F.B.I. Agents confirms appellant's attempt at escape upon the realization that he was to be apprehended. We conclude that this evidence, viewed in the light most favorable to the government, was certainly adequate to warrant the jury's conclusion that appellant knew that the weapon was contained in the suitcase which he had delivered to Tampa and which he later claimed in Chicago.

Likewise, although we find it unnecessary to discuss in detail the evidence relating to the issue of whether or not appellant knew that the weapon was stolen, our examination of that evidence leads us to the conclusion that it was indeed adequate to sustain the jury's determination that appellant knew of the stolen nature of the gun.[6] In this respect, we find that the case which appellant cites in support of his position herein, *Gargotta v. United States,* 77 F.2d 977 (8th Cir. 1935), is not controlling here. We are not persuaded, then, by appellant's argument that the evidence was inadequate to support the jury's determination that he had the requisite knowledge that the gun was stolen. Nor are we impressed with appellant's argument that the district court erred in refusing to give his tendered instruction on the requirements necessary to establish knowledge of the stolen nature of the weapon. In view of the fact that the trial court gave an instruction explaining the elements of a § 641 violation, we conclude that the district court's refusal to give appellant's tendered instruction was not fatal and is not grounds for reversal.

Finally, we fail to agree with appellant's assertion that the evidence was insufficient to sustain his conviction on Counts III and IV of the indictment. Count III charged appellant with transporting the M-16 from Tampa to Chicago, in violation of § 922(a)(4). Appellant argues, however, that it was the F.B.I., not he, who removed his luggage from the Greyhound terminal in Tampa and placed it on a Delta aircraft bound for Chicago. Thus, appellant claims that although he may have set in motion a chain of events which could have resulted in the commission of a crime, his "attempt" to violate § 922(a)(4) is not a crime.

We are not persuaded by appellant's position in this regard. Count III of the indictment charged appellant with "causing" the transportation of a machine gun in inter-

5. The evidence revealed that these baggage claim tickets were numbered ER-048-997 and ER-048-998.

6. Here we find significant the evidence which showed that stamped on the stock of the M-16, before obliteration was attempted, were the following words: "Property of the United States Government".

state commerce from Tampa to Chicago. Although it is true, we admit, that appellant did not physically place the weapon in the possession of the carrier which ultimately transported it to Chicago, clearly it was he who requested that the suitcases be shipped to Illinois. It was he who—by sending the baggage to the Greyhound terminal in Tampa—set the entire delivery process in motion which ultimately resulted in the return of the luggage to the Greyhound terminal in Chicago. It was appellant, then, who "wilfully cause[d] an act to be done which if directly performed by him or another would be an offense against the United States . . . ." 18 U.S.C. § 2(b). We are not inclined to conclude, therefore, based on the circumstances herein, that the means by which the weapon was transported to Chicago or the fortuitous intervention of the F.B.I. into the transportation process served to absolve appellant or lend credence to his "attempt" theory. It is clear to this court, as it apparently was to the jury, that, based on the evidence adduced, appellant was guilty of a violation of § 922(a)(4).

Lastly, as to the final count of the indictment, which charged appellant with delivery of a firearm to a common carrier for interstate transportation from Chicago to Tampa, we will not in this opinion discuss this matter in great detail, as our review of the record [7] leads us to the conclusion that there was ample evidence upon which the jury could have convicted appellant of a violation of § 922(e).

Turning now to the remaining issue in this appeal, involving the question of immunity, appellant argues that the district court's refusal to direct the government to seek immunity for the witness Arnold Wilson violated both his Fifth Amendment due process rights and his right to compulsory process under the Sixth Amendment. We disagree. The law is clear in this Circuit that a district court is powerless to direct the government to seek use immunity in order to secure testimony which the defense deems relevant, *United States v. Allstate Mortgage Corporation,* 507 F.2d 492, 494 (7th Cir. 1974), in circumstances where, as here, the defense witness exercises his privilege against self-incrimination. *United States v. Ramsey,* 503 F.2d 524, 532 (7th Cir. 1974). It is peculiarly within the authority of the government, then, not the court, to confer such immunity upon a witness. 18 U.S.C. § 6003. If we were to accept and give effect to appellant's position in this appeal, we would seriously erode this court's *Allstate* and *Ramsey* decisions as well as impinge upon the intent of Congress; and we are not inclined to do so in this case. We conclude, therefore, that the trial court was correct in ruling that it did not have the authority to order the government to petition for immunity for witness Arnold Wilson.

Accordingly, for the reasons stated above, appellant's conviction in the district court must be, and is hereby affirmed.

7. Most significant here, in our judgment, are the two Greyhound baggage tickets and the testimony of Mary May, which are alluded to earlier in this opinion.