**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Michael BOUNOS and John Browning,**
**Defendants-Appellants.**

**Nos. 82–2441, 82–2448.**

United States Court of Appeals,
Seventh Circuit.

Submitted Oct. 21, 1982.

Decided Oct. 29, 1982.

William H. Theis, Chicago, Ill., James M. Shellow, Shellow, Shellow & Glynn, Milwaukee, Wis., for defendants-appellants.

Robert W. Tarun, John L. Sullivan, Ira H. Raphaelson, Asst. U.S. Attys., Chicago, Ill., for plaintiff-appellee.

Before ESCHBACH, POSNER, and COFFEY, Circuit Judges.

POSNER, Circuit Judge.

This is an interlocutory appeal, see *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), from an order denying the defendants' motion, based on the double jeopardy clause of the Fifth Amendment, to dismiss a federal indictment charging them with participation in a narcotics conspiracy. The defendants were convicted last July on a separate indictment charging a conspiracy materially identical to the present one except in respect to time: it charged a conspiracy that began in April 1980, whereas the present indictment charges a conspiracy that ended in May 1979. If the allegations of the two indictments with respect to the dates of the conspiracies are correct, they are separate conspiracies and the previous judgment against the defendants is no bar to this prosecution. The defendants were prepared to testify in the hearing on their motion to dismiss the indictment on double jeopardy grounds that the conspiracy which the government thought had ended in May 1979 was still going on in April 1980, showing there was a single conspiracy. But the defendants naturally were worried about the consequences of confessing that they had engaged in illegal activity in a period during which the government thought they had been "clean." They wanted the court to tell them: "as to the matters you discussed today, with the exception of those that are on trial, you cannot be prosecuted, for as a Federal Judge I give you immunity for those." The court refused to intone this formula but did offer "to hold as a matter of law that the Fifth Amendment privilege has not been waived."

This did not satisfy the defendants; they did not testify; and the district court found that there had been two conspiracies rather than one and denied the motion to dismiss the indictment. Since the remaining evidence at the double jeopardy hearing established that there were two separate conspiracies and hence that the defendants' conviction last July was not a bar to the present

prosecution, the only substantial question on this appeal is whether the district court improperly discouraged the defendants from introducing testimony that the two conspiracies were really one, by refusing to give them the immunity they sought.

A criminal defendant may not be put to the choice between giving up his Fifth Amendment right not to incriminate himself and giving up some other constitutional right. *Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968); *Wade v. Franzen,* 678 F.2d 56, 57 (7th Cir.1982). Hence if the defendants had testified to their conspiratorial activities between May 1979 and April 1980 in order to establish a claim under the double jeopardy clause of the Fifth Amendment, they would not thereby have surrendered their right (also under the Fifth Amendment) not to give testimony that could be used directly or indirectly to convict them of those unlawful activities. *United States v. Inmon,* 568 F.2d 326, 333 (3d Cir.1977); *United States v. Stricklin,* 591 F.2d 1112, 1118 (5th Cir.1979). The district court was therefore correct in offering to hold that the defendants would not be waiving their Fifth Amendment rights if they confessed guilt for the purpose of making out their double jeopardy claim.

The novelty in this case comes from the defendants' insistence that they were entitled to a judicial grant of immunity before they decided whether to testify in the double jeopardy hearing. This circuit has consistently held that there is no such animal as judicial immunity, see, e.g., *United States v. Allstate Mortgage Corp.,* 507 F.2d 492, 494–95 (7th Cir.1974); *United States v. Smith,* 542 F.2d 711, 715 (7th Cir.1976), on the basis of the reasoning in *Earl v. United States,* 361 F.2d 531, 534–35 (D.C.Cir.1966). The Third Circuit has recently taken a contrary view. See, e.g., *Government of Virgin Islands v. Smith,* 615 F.2d 964, 968–74 (3d Cir.1980). But all these cases involve efforts of defendants to get the court to grant immunity to witnesses who the defendants believe can help

them make out their defense. They are therefore just the obverse of cases where the prosecutor grants immunity to obtain evidence helpful to the prosecution. But here no one was trying to drag in a reluctant witness. No one tried to force these defendants to testify; the government was entirely content that they should remain silent. But of course the defendants could not remain silent without sacrificing their double jeopardy claims. They were therefore vitally concerned with the consequences to themselves of giving incriminating evidence. They wanted assurance that so far as any future prosecutions against them were concerned it would be as if they had remained silent.

■ We think they got all the assurance they were entitled to when the district court told them that it was prepared to hold that they would not waive their Fifth Amendment right not to incriminate themselves by testifying at the double jeopardy hearing. *Kastigar v. United States*, 406 U.S. 441, 453, 459, 92 S.Ct. 1653, 1661, 1664, 32 L.Ed.2d 231 (1972), upheld the constitutionality of an immunity statute that provided that "no testimony or other information compelled under the [statute] (or any information directly or indirectly derived from such testimony or other information) may be used in any criminal case ...," precisely on the ground that the statute gave "the degree of protection that the Constitution requires." The Fifth Amendment of its own force, without the superaddition of a judicial immunity order, would have prevented the government from using the defendants' statements in a double jeopardy hearing, or leads developed from those statements, to mount a subsequent prosecution against them. See 406 U.S. at 460–61, 92 S.Ct. at 1664–65.

This "use and derivative use immunity," 406 U.S. at 459, 92 S.Ct. at 1664, was all the defendants were entitled to receive under the Fifth Amendment, and they received it, in effect, when the district court assured them that by testifying they would not be waiving the Fifth Amendment. True, some remarks by the district judge suggest that she thought the self-incrimination clause provides less protection against derivative use than *Kastigar* indicates it does; and the prosecutors took the position, untenable in light of *Simmons,* that the defendants would waive their Fifth Amendment rights by testifying in the double jeopardy hearing. But the defendants were not entitled to an advisory opinion on the scope of the Fifth Amendment, either from the court or the prosecution; and, being ably represented, will not be heard to complain that the court gave them an inaccurate one. They certainly did not need, and were not entitled to, a formal grant of immunity, express assurances, or an exegesis of the Fifth Amendment. It is enough that they would not have waived any of their rights under the Fifth Amendment by testifying, including the right to claim, should they be subsequently prosecuted for unlawful acts committed between May 1979 and April 1980, the same "immunity" to which they would have been entitled under the statute upheld in *Kastigar* for testimony they were "compelled" to give in order to make out a double jeopardy claim. Since they knew all this—they are, to repeat, ably represented—we are not persuaded that their decision not to testify was motivated by fear of self-incrimination.

The defendants also knew that they were not entitled to blanket ("transactional") immunity, which is what they were seeking in the passage we quoted earlier; that is, to immunity from prosecution for their conspiratorial acts between May 1979 and April 1980 even if the government discovered and proved those acts without relying either directly or indirectly on their testimony at the double jeopardy hearing. *Kastigar* makes this clear. 406 U.S. at 453, 92 S.Ct. at 1661. They asked for too much. Their request was properly denied.

AFFIRMED.