UNITED STATES of America,
Plaintiff-Appellee,

v.

Harry Ronald FRANS,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

James J. ARRAJJ, Jr.,
Defendant-Appellant.

Nos. 82–1506, 82–1507.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 28, 1982.

Decided Jan. 6, 1983.

Rehearing and Rehearing En Banc
Denied March 9, 1983.

Theodore G. Albert, Ironwood, Mich., Thomas M. Croke, Milwaukee, Wis., for defendant-appellant.

William E. Callahan, Jr., Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before BAUER, Circuit Judge, POSNER, Circuit Judge, and WISDOM,* Senior Circuit Judge.

BAUER, Circuit Judge.

Defendants Harry Frans and James Arrajj, Jr. were arrested in September 1981 in West Milwaukee, Wisconsin, and charged with conspiracy to transport stolen goods in interstate commerce. 18 U.S.C. § 371 (1948).

Frans was convicted after a one-day bench trial and sentenced to fifteen months imprisonment. He appeals his conviction on the grounds that the government's evidence of a conspiracy was insufficient and that the trial judge's findings were legally faulty.

Immediately after Frans' trial, Arrajj was tried, convicted by a jury, and sentenced by the same judge to fifteen months imprisonment. He claims now that the government wrongfully refused to grant immunity to Frans so that Frans would testify on Arrajj's behalf. Arrajj also argues that the government did not prove that Arrajj knew of a conspiracy.

We affirm both judgments of conviction.

## I. Facts

The Federal Bureau of Investigation learned from an informant that Daryl Kilmer and Defendant Frans planned to steal electric motors from a warehouse in West Milwaukee. Kilmer had second thoughts about committing the crime, so he contacted the FBI and agreed to cooperate with federal agents. Kilmer was outfitted with a tape recorder and microphones on the morning of the planned theft. Then, Kilmer met Frans and drove to the warehouse, where they began preparations for the theft. Their conversation during this time was recorded. Arrajj arrived at the warehouse at approximately 4:30 p.m. He broke into a locked storage area, and the three men moved electric motors from that storage area to the center of the warehouse floor. As the trio was leaving the warehouse at 5:30 p.m. to get vehicles to transport the electric motors, they were arrested by FBI agents who had hidden in the warehouse.

## II. Arrajj's Claims

### A. Sufficiency of the Evidence

■ Defendant Arrajj argues that the government did not prove that he participated in the conspiracy. He claims ignorance of any impending crime, asserting that when he arrived at the warehouse and discovered what was transpiring, he merely acquiesced in the acts performed by Kilmer and Frans. The defendant correctly notes that proof of knowing membership is necessary for a conspiracy conviction, *United States v. Garza-Hernandez*, 623 F.2d 496, 501 (7th Cir.1980). He contends that the government failed in its proof of this element.

■ We will not disturb the jury's verdict if it is supported by substantial evidence. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Santiago*, 582 F.2d 1128, 1130 (7th Cir.1978). The evidence presented here through the testimony of government witnesses and the tape recording transcript amply supports the government's charge that the defendant actively conspired to steal the motors.[1] Therefore, this challenge fails.

---

* The Honorable John Minor Wisdom, Senior Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

1. The transcript of the taped conversation between Kilmer and Frans after they arrived at the warehouse revealed that they anticipated Arrajj's arrival. Moreover, the conversation after Arrajj arrived indicated that Arrajj had been aware of what was going on before he had arrived, and that he had come prepared to assist in the crime. Additionally, Kilmer's testimony implicated Arrajj in the conspiracy.

A party need not know all of the purposes and details of a conspiracy to be proved a co-conspirator. *United States v. Escalante*, 637 F.2d 1197, 1200 (9th Cir.1980); *United States v. Bastone*, 526 F.2d 971, 981 (7th Cir.1975), *cert.*

**B.** *Government Refusal to Grant Immunity*

At his trial, Defendant Arrajj called Frans, who had been convicted the previous day, but Frans pleaded the fifth amendment privilege against self-incrimination and refused to answer any questions regarding the conspiracy. Arrajj's attorney asked the government to immunize Frans' testimony, but the government refused. At the same time, the government used Daryl Kilmer as a primary witness against Arrajj. Kilmer was granted immunity from prosecution in exchange for his cooperation with the FBI and prosecutors. Now, Arrajj claims that the government's refusal to immunize Frans was an abuse of its discretion. Arrajj urges this court to reverse his conviction because the government should not be allowed to rely on immunized testimony to support its case, and refuse, for no apparent reason, to immunize a witness allegedly favorable to the defendant. The circumstances of this case, however, do not require reversal.

■ Generally, "a district court is powerless to direct the government to seek use immunity in order to secure testimony which the defense deems relevant, *United States v. Allstate Mortgage Corporation,* 507 F.2d 492, 494 (7th Cir.1974), in circumstances where . . . the defense witness exercises his privilege against self-incrimination." *United States v. Smith,* 542 F.2d 711, 715 (7th Cir.1976). *See United States v. Bounos,* 693 F.2d 38, 39 (7th Cir.1982). Congress has conferred that power exclusively upon the executive branch, not the judiciary. 18 U.S.C. § 6003 (1970). Moreover, the immunity statutes and their legislative history indicate that the provisions were not designed to benefit defendants. *See United States v. Herman,* 589 F.2d 1191, 1202–03 (3d Cir.1978), *cert. denied,* 441

*denied,* 425 U.S. 973, 96 S.Ct. 2172, 48 L.Ed.2d 797 (1976). It is sufficient that the government prove a connection between the defendant and the conspiracy. *See, e.g., United States v. Dalzotto,* 603 F.2d 642, 645 (7th Cir.), *cert. denied sub nom., Young v. United States,* 444 U.S. 994, 100 S.Ct. 530, 62 L.Ed.2d 425 (1979).

U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979) (federal court has no power to review prosecutorial decision not to immunize defense witness).

In this case, the trial judge recognized that he had no authority to request immunity. *See, e.g., In re Corrugated Container Anti-Trust Litigation,* 620 F.2d 1086, 1094–95 (5th Cir.1980), *cert. denied, Adams Extract Co. v. Franey,* 449 U.S. 1102, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981). The government apparently felt that it would gain nothing, and would hinder future actions, by immunizing Frans.

This court has held consistently that it will not review a prosecutor's immunization decisions. *In re Perlin,* 589 F.2d 260, 269 (7th Cir.1978); *Smith, supra; United States v. Rauhoff,* 525 F.2d 1170, 1178 (7th Cir. 1975); *United States v. Allstate Mortgage Corp.,* 507 F.2d 492, 494–95 (7th Cir.1974), *cert. denied,* 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975). Nevertheless, the defendant argues that his constitutional rights were violated, and we have implied that review may be proper if there is a clear abuse of discretion violating the due process clause. *In re Perlin, supra.* The facts here do not demonstrate such a violation.

■ The defendant did not attempt to show any bad motives of the government at trial, and has not shown any on appeal. We agree with the Third Circuit that a defendant must make a substantial evidentiary showing that the government intended to distort the judicial fact-finding process before we will depart from the strong tradition of deference to prosecutorial discretion. *Herman,* 589 F.2d at 1203–04.[2] No such showing was accomplished here. Our holding in *Smith,* 542 F.2d at 715, applies to defeat Defendant Arrajj's argument.[3]

**2.** *See generally United States v. Nixon,* 418 U.S. 683, 693, 94 S.Ct. 3090, 3100, 41 L.Ed.2d 1039 (1974) (executive branch has absolute discretion to decide whether to prosecute a case).

**3.** Defendant Arrajj raises one other ground on this appeal. The trial court, on the government's motion to reconsider, reversed its order enforcing a magistrate's decision to compel dis-

### III. Frans' Claims

#### A. *Sufficiency of the Evidence*

Defendant Frans argues that the government did not prove that he participated in the conspiracy because the evidence did not show either that he had "specific intent" to violate the law or that the goods were transported in interstate commerce.

██ First, a conspiracy consists of a confederation of two or more persons formed to commit a criminal act. The essential elements of the offense are: (1) an agreement; (2) an overt act in furtherance of the conspiracy; and (3) knowledge of the conspiratorial purpose. *United States v. Hedman*, 630 F.2d 1184, 1192 (7th Cir.1980), *cert. denied*, 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981). The facts detailed above proved the first two elements. Additionally, the government's evidence indicated not only that Frans knew of the plans to steal the electric motors and ship them to other states, but also that he acted as the ringleader in making many of the plans. The government's evidence was substantial on each element of the offense.

██ Second, the government need not prove interstate transportation of the stolen goods to support a conspiracy conviction. The crime of conspiracy involves an agreement to violate the law, not accomplishment of the violation. *United States v. Donner*, 497 F.2d 184, 190 (7th Cir.), *cert. denied*, 419 U.S. 1047, 95 S.Ct. 619, 42 L.Ed.2d 641 (1974).

#### B. *Legal Sufficiency of Trial Court Finding*

██ At the close of Frans' trial, the court stated: "All right. Well, I'm not going to belabor anything here. The evidence is overwhelming that the defendant committed all the acts necessary, and the conspiracy is proven beyond any questionable doubt. I find and adjudge the defendant guilty of the offense charged in the indictment." Tr. at 109. The defendant claims that the phrase "beyond any questionable doubt" renders this court incapable of deciding whether the judge deviated from the required standard of proof "beyond a reasonable doubt." [4]

The prosecution bears the burden of proving each element of an offense beyond a reasonable doubt. *Moore v. United States*, 429 U.S. 20, 22, 97 S.Ct. 29, 30, 50 L.Ed.2d 25 (1976). In this bench trial, the judge was charged with applying that standard when scrutinizing the evidence. Notably, the defendant stressed during oral argument that he was not accusing the trial judge of misapplying the law. Rather, the complaint is that this court cannot properly review a judgment "beyond any questionable doubt." Despite this reasoning, we already have decided that substantial evidence to convict supports each element of the offense.

The trial judge regrettably used the word "questionable" in his ruling. However, he also ruled that the evidence on each element was "overwhelming." The defendant has not indicated that the wrong standard was applied; he quarrels only with the

---

closure of the government's confidential informant. The defendant claims this was error because the magistrate's determination was neither clearly erroneous nor contrary to law. 28 U.S.C. § 636(b)(1)(A) (1979). These standards, however, do not necessarily restrict district court review of a magistrate's findings. A magistrate makes recommendations to the district court. That court then may satisfy itself that the recommended actions are fair and proper by receiving additional evidence or conducting a full review. *See, e.g., United States v. Raddatz*, 447 U.S. 667, 673–76, 100 S.Ct. 2406, 2411–2412, 65 L.Ed.2d 424 (1980); *United States v. Southern Tanks, Inc.*, 619 F.2d 54,

55–56 (10th Cir.1980); *Muhich v. Allen*, 603 F.2d 1247, 1251 (7th Cir.1979).

**4.** Defendant Frans also suggests in his Reply brief that the trial judge had decided on a verdict of guilt before the trial even began. The defendant wrote, in part: "It is not difficult to entertain reasoning to the effect that the entire trial was but an exercise of some motion awaiting the already-determined inevitable judgment. How else can the appellant interpret the statements made by the district judge?" Frans' Reply br. at 8. This is a serious allegation which is not supported by any evidence.

words spoken. We should not allow this case to hinge on that single word. *De minimis non curat lex.* Although the phrase "beyond a reasonable doubt" is an important indicator of a constitutionally required standard, the trial judge here was not duty-bound to express it aloud in his finding that the government succeeded overwhelmingly in proving its case.

### IV. Conclusion

In summary, substantial evidence supports the convictions in both cases. The government did not abuse its discretion when it refused to grant immunity to Frans so that Arrajj could use Frans' testimony, and neither the trial court nor this court has direct or indirect power to immunize witnesses. Finally, the trial judge's finding of Frans' guilt was legally sufficient. Accordingly, the judgments are affirmed.

AFFIRMED.