715 F.2d 1164
 13 Fed. R. Evid. Serv. 1649
 UNITED STATES of America, Plaintiff-Appellee,
v.
Charles W. WILSON, Ronald Williams, Gerald Winfield, William
Barnett, John Mosby, Louis Winfield, Charles R.
Wilson, Levell Wilson, and Katherine
Martin Rhone, Defendants-Appellants.
 Nos. 81-1870 to 81-1877 and 81-2054.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 4, 1983.
Decided Aug. 19, 1983.
Certiorari Denied Nov. 14, 1983.
See 104 S.Ct. 434.
Certiorari Denied Jan. 9, 1984.
See 104 S.Ct. 727.
 
 Stephen M. Komie, Marc R. Kadish, Donald T. Bertucci, Robert Edwards, Richard Walsh, Gerald Collins, Carl P. Clavelli, Stephen J. Broussard, Martha A. Mills, Cotton, Watt, Jones, King & Bowlus, Chicago, Ill., Patrick Neher, Third Year Law Student, for defendants-appellants.
 Susan Bogart, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.
 Before BAUER and POSNER, Circuit Judges, and JAMESON, Senior District Judge.*
 BAUER, Circuit Judge.
 
 
 1
 Defendants-appellants bring this appeal to challenge their convictions for various drug-related offenses, and, in the case of Defendant Charles W. Wilson, willful violation of the federal income tax laws. Defendants allege numerous errors on the part of the district court. We find that none of these allegations has merit. Accordingly, the judgments of conviction are affirmed as to all defendants.
 
 I. BACKGROUND
 
 2
 The criminal enterprise involved in this case was an ongoing narcotics business which involved the possession and distribution of heroin and cocaine. A federal grand jury, on October 21, 1980, returned a seven count indictment charging eleven defendants with violations of 21 U.S.C. §§ 841(a)(1), 846, and 848; the indictment also charged a single defendant with violation of 26 U.S.C. § 7203.
 
 
 3
 Count One of the indictment charged Defendant Charles W. Wilson (C.W.) and Harry Cannon with conducting a continuing criminal enterprise from July 1976 through the date of indictment. The continuing enterprise charged consisted of the operation, in concert with others, of a major narcotics ring. Count One further sought the forfeiture of certain property belonging to C.W. and Cannon; the property was alleged to have been obtained with profits from the narcotics business.
 
 
 4
 Count Two charged defendants with a conspiracy to possess and distribute heroin and cocaine. Cannon and C.W. were charged with controlling the narcotics enterprise, and with procuring heroin and cocaine for distribution. Five persons, C.W., Ronald Williams (Williams), Gerald Winfield (Gerald), Charles R. Wilson (C.R.), and Howard Love (Love), were charged with the dilution, mixing, and packaging of the narcotics at various locations, including a building owned by C.W. and Katherine Martin Rhone (Rhone) at 1618 South Christiana in Chicago. Williams, Gerald, Love, and Levell Wilson (Levell) were charged as the distributors of narcotics packages to street sellers; the indictment further alleged that these four kept records of, and collected a percentage of the proceeds from, street sales of the narcotics. C.W., Love, Williams, Gerald, Rhone, Louis Winfield (Louis), C.R., and Levell were charged in Count Two as street sellers of heroin; C.R. and Levell also were charged with cocaine street sales. William Barnett and John Mosby were charged for their role as lookouts for the street sellers. Finally, Count Two charged C.W. and Cannon with collecting the proceeds from the narcotics business and with paying salaries to Williams, Gerald, Love, Barnett, and Mosby for their participation in the enterprise.
 
 
 5
 Counts Three and Four of the indictment charged Levell with the distribution of specified quantities of cocaine and heroin.
 
 
 6
 Finally, Counts Five, Six, and Seven charged C.W. with federal income tax law violations for the years 1974, 1975, and 1976.
 
 
 7
 Howard Love pled guilty to Count Two of the indictment on January 30, 1981. Under the plea agreement, Love agreed to testify on behalf of the government; the government agreed to recommend no specific sentence and to make the extent of Love's cooperation known to the sentencing judge.
 
 
 8
 A jury trial against the remaining ten defendants began on February 9, 1981. On March 31, 1981, the jury returned a verdict finding nine of the remaining defendants guilty of the offenses charged in the indictment. A mistrial was declared as to Cannon; at a later trial Cannon was also convicted.
 
 
 9
 In addition to the guilty verdict, the jury ordered the forfeiture of C.W.'s assets as listed in Count One of the indictment.
 
 
 10
 The district court sentenced the defendants in May of 1981. C.W. was sentenced to thirty years in the custody of the Attorney General on Count One; as to that Count the court also imposed a $100,000.00 fine and ordered forfeiture of C.W.'s assets. On Count Two, C.W. received a concurrent sentence of fifteen years incarceration; an additional fine of $25,000.00 also was imposed. Finally, C.W. was sentenced to a one-year concurrent sentence on each of Counts Five, Six, and Seven; an additional $10,000.00 fine was imposed for each of these counts as well. The sentences of incarceration for Counts Five through Seven were suspended, and a five-year probation period was imposed to run consecutively to the thirty-year incarceration.
 
 
 11
 Williams was sentenced to fifteen years incarceration on Count Two. Gerald received a twelve-year sentence on Count Two. Mosby's sentence on Count Two was five years incarceration; Barnett received an eight-year sentence. Louis was sentenced to six years incarceration and a $5,000.00 fine was imposed. C.R. was sentenced to six years incarceration; this sentence was consecutive to a state sentence C.R. was serving. Rhone was sentenced to a three-year period of incarceration on Count Two; additionally, the court imposed a $25,000.00 fine on Rhone.
 
 
 12
 Levell was sentenced to an eight-year period of incarceration and a $10,000.00 fine on Count Two. As to Counts Three and Four, Levell received a concurrent sentence of eight years on each as well as a $10,000.00 fine. The court also imposed a twenty-year special parole period on Levell with respect to Counts Three and Four.
 
 
 13
 With the exception of C.W., all defendants were released on bond pending appeal; all filed timely Notices of Appeal. We have jurisdiction of these direct criminal appeals pursuant to 28 U.S.C. § 1291.
 
 II. ISSUES PRESENTED
 
 14
 Defendants have filed a joint brief on this appeal in which they urge several grounds for reversal of their convictions. First, defendants contend the district court's voir dire of the jury was inadequate in light of extensive, prejudicial pretrial publicity. Second, defendants urge that the trial judge abused his discretion by failing to hold an evidentiary hearing on certain allegations of prosecutorial misconduct. Third, defendants contend that their motions for severance were denied improperly. Fourth, defendants argue that the trial court erred by failing to hold an evidentiary hearing on an allegation of juror misconduct. Fifth, defendants claim they should have been allowed to use all of Love's prior convictions, dating back more than thirty years, for impeachment. Defendants' final joint claim on appeal is that the district court erred by not ordering grants of immunity to certain defense witnesses who refused to testify.
 
 
 15
 In addition to their joint appeal, individual briefs were filed by Defendants Mosby, Barnett, and Rhone. Barnett and Rhone argue that the evidence presented at trial was insufficient to support the jury verdicts with respect to them. Mosby also challenges the sufficiency of the evidence to support his conviction. Additionally, Mosby contends that the district court erred in denying his motion for a severance and that the district court erred by excluding certain evidence Mosby sought to introduce.
 
 
 16
 For reasons set forth below, we find that none of the arguments advanced by the defendants has merit. Accordingly, we affirm their convictions.
 
 III. THE VOIR DIRE WAS ADEQUATE
 
 17
 At the time the indictment was returned in this case, the narcotics ring operated by the defendants was a major source of street sale drugs in Chicago; on a typical day the organization sold over $10,000.00 worth of heroin and cocaine. Thus, the case attracted extensive pretrial media coverage. Defendants now contend that by its failure to question each juror individually about his or her exposure to that publicity, the district court failed to adequately protect defendants' right to an impartial jury.
 
 
 18
 Where, as here, a jury's impartiality is challenged on the basis of pretrial publicity, the defendants must show that exposure to the publicity caused the actual existence of an opinion in a jury's mind at the time of trial. Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1960). A mere showing that the jurors were familiar with news articles concerning the narcotics ring cannot establish prejudice because " '[i]t is not required ... that jurors be totally ignorant of the facts and issues involved,' especially given the presumption of juror impartiality that applies in all cases." United States v. Kampiles, 609 F.2d 1233 (7th Cir.1979), cert. denied, 446 U.S. 954, 100 S.Ct. 2923, 64 L.Ed.2d 812 (1980) (quoting Irvin v. Dowd, 366 U.S. 717, 722-23, 81 S.Ct. 1639, 1642-43, 6 L.Ed.2d 751 (1960)).
 
 
 19
 This circuit has addressed repeatedly the procedures to be used to insure juror impartiality where prejudicial pretrial publicity is brought to the trial court's attention. And, we have consistently rejected the rule proposed by the defendants here that an individual examination of the jurors be conducted in all cases where pretrial publicity is at issue. United States v. Kampiles, 609 F.2d 1233 (7th Cir.1979), cert. denied, 446 U.S. 954, 100 S.Ct. 2923, 64 L.Ed.2d 812 (1980); United States v. Carter, 602 F.2d 799 (7th Cir.), cert. denied, 444 U.S. 967, 100 S.Ct. 457, 62 L.Ed.2d 380 (1979); Margoles v. United States, 407 F.2d 727 (7th Cir.), cert. denied, 396 U.S. 833, 90 S.Ct. 89, 24 L.Ed.2d 84 (1969). We remain unconvinced that individual interrogation is a superior guarantee of impartiality; indeed "[i]t seems equally plausible that the average layman would become inhibited if he were called individually into the chambers of a federal judge as he would in the presence of his peers." Margoles v. United States, 407 F.2d 727, 732 (7th Cir.1969). Thus, we reject defendants' claim that their fair trial rights were violated by the district court's failure to interrogate jurors individually with respect to the pretrial publicity in this case.
 
 
 20
 Defendants also challenge the district court's failure to conduct individual voir dire with respect to media coverage in the interim between the swearing-in of the jurors on February 9, 1981, and the commencement of the trial two weeks later. This challenge must also fail.
 
 
 21
 Initially, we note that the trial judge properly admonished the jurors on February 9 to avoid exposure to any publicity concerning the case.
 
 
 22
 Moreover, when the trial commenced the judge conducted a collective voir dire of the jury to determine whether any juror had been exposed to the interim publicity. The sole juror who responded affirmatively to this inquiry was questioned individually and subsequently excused. Thus, the trial court followed precisely the procedure set forth by this court in Margoles:
 
 
 23
 [T]he procedure required by this Circuit where prejudicial publicity is brought to the court's attention during a trial is that the court must ascertain if any jurors who had been exposed to such publicity had read or heard the same. Such jurors who respond affirmatively must then be examined, individually and outside the presence of the other jurors, to determine the effect of the publicity. However, if no juror indicates, upon inquiry made to the jury collectively, that he has read or heard any of the publicity in question, the judge is not required to proceed further.
 
 
 24
 407 F.2d at 735 (emphasis added).
 
 
 25
 We conclude that the trial court properly used collective voir dire to insure that the jury's impartiality remained untainted despite the pretrial and trial publicity attracted by this case. Accordingly, we reject the defendants' claim that inadequate precautions were taken to protect their right to an impartial jury.
 
 IV. ALLEGED PROSECUTORIAL MISCONDUCT
 
 26
 During the trial in this case, the defendants alleged certain acts of prosecutorial misconduct; defendants contended that the alleged misconduct required dismissal of the indictment against them, or, at a minimum, an evidentiary hearing. The defendants alleged that the government had leaked information to the press which resulted in prejudicial pretrial publicity; that the government used a body recorder on the cellmate of Defendants C.W. and C.R. to eavesdrop on their conversations; and that the government improperly intimidated witnesses to secure favorable testimony. On this appeal, the defendants urge that the district court's failure to hold an evidentiary hearing with respect to these allegations was an abuse of discretion. We disagree.
 
 
 27
 With respect to the claim that government attorneys had leaked certain prejudicial information to the press, the district judge found that there was no foundation for defendants' allegations. This finding was proper in light of representations by the government attorneys that they had not disclosed such information; specific indications in the news articles that no information had been provided by government attorneys; and evidence that although the "leaked" information had been in the government's possession for several months, none of the "leaks" occurred until after the information had been released to defense counsel.
 
 
 28
 Moreover, dismissal of an indictment for prosecutorial misconduct is warranted only where a substantial right of the defendant has been jeopardized. In this case there was no evidence that pretrial prejudicial publicity, whatever its source, affected any rights of the defendants. Indeed, the sole juror exposed to prejudicial publicity was excused. Accordingly, the district court acted properly both in denying an evidentiary hearing on the source of the prejudicial publicity and in refusing to dismiss the indictment.
 
 
 29
 Similarly, the district court properly exercised its discretion with respect to the tape recording of conversations in the cell of C.W. and C.R. None of the conversations so intercepted were ever admitted into evidence, and the prosecuting attorneys denied having been exposed to the recordings. Furthermore, the trial court reviewed the tape recordings in camera before denying the defendants' request for an evidentiary hearing. On the basis of that review, the trial judge found that the tapes were connected to the investigation of a crime separate from those charged in the indictment. The district court therefore concluded that defendants' rights in the case at trial had not been affected by the recording incident. We believe that the district court's in cameraeview of the tape recordings, under the circumstances presented here, adequately safeguarded the defendants' interests.[1] Accordingly, we reject defendants' contention that the failure to hold an evidentiary hearing was an abuse of discretion.
 
 
 30
 Finally, defendants challenge the district court's refusal to grant an evidentiary hearing with respect to allegations of witness intimidation.
 
 
 31
 The defendants' motion to dismiss the indictment on the basis of the prosecution's intimidation of potential witnesses alleged a panoply of acts by the government to secure favorable testimony. None of these allegations, however, contained sufficient facts to provide the basis for a meaningful evidentiary hearing. The government responded with a general denial.
 
 
 32
 The trial judge refused defendants' motion for dismissal of the indictment on the basis that the bare allegations of defense counsel were not sufficient to warrant granting the motion. We note, however, that the trial judge invited defense counsel to introduce the factual grounds for specific allegations of prosecutorial misconduct.
 
 
 33
 Moreover, the trial court did not reject out-of-hand the possibility of an evidentiary hearing on such specific allegations. Instead, the court requested more specific allegations, and remarked, "[i]f there needs to be a determination on a case-by-case basis, then we are going to have to get into that ... with the procedure I suggested that if there is not a hearing, at least I may well require the Government to respond in like kind ...." Tr. at 62-63 (emphasis added).
 
 
 34
 If there was a factual basis for defendants' allegations of prosecutorial misconduct, that factual basis should have been presented to the trial court. The defendants were afforded an opportunity to present allegations sufficient to warrant an evidentiary hearing. It is no basis for relief on appeal that defendants failed to avail themselves of that opportunity.
 
 
 35
 Under these circumstances, we believe the district court properly refused to dismiss the indictment. And, to whatever extent the district court may be said to have "refused" an evidentiary hearing on these bare allegations of prosecutorial misconduct, we hold that such action was a proper exercise of judicial discretion.
 
 V. MOTIONS FOR SEVERANCE
 
 36
 Defendants next claim that the district court erred in denying various motions for severance. These motions included a motion to sever Counts Five through Seven of the indictment (the income tax charges) from Counts One through Four (the drug-related charges) as well as the motions of individual conspirators for separate trials on the basis of prejudicial pretrial publicity. A trial court's decision not to grant a motion for severance will be reversed only upon a showing of abuse of discretion. See, e.g., United States v. Thomas, 676 F.2d 239 (7th Cir.1980); United States v. West, 670 F.2d 675 (7th Cir.1982); United States v. Tanner, 471 F.2d 128 (7th Cir.), cert. denied, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972). Defendants have failed to make such a showing in this case.A. The Joinder of the Offenses
 
 
 37
 Federal Rule of Criminal Procedure 8(a) allows the joinder of two or more offenses in the same indictment.[2] The defendant seeking severance under Rule 14, Federal Rules of Criminal Procedure, then bears the burden of showing that the joinder is prejudicial; this requires more than a mere showing that severance might have made acquittal more likely. United States v. Thomas, 676 F.2d 239 (7th Cir.1980).
 
 
 38
 In this case, defendants argue first that the joinder of Counts Five through Seven with the narcotics charges violated the dictates of Rule 8(a). We disagree. Joinder of offenses is a means of avoiding expensive, duplicative trials. United States v. Mardian, 546 F.2d 973 (D.C.Cir.1976). Thus, joinder under Rule 8 is favored where there are common elements of proof in the joined offenses, and where the interest of judicial economy outweighs any prejudice to the defendants. Id. at 979.
 
 
 39
 Count One of the indictment charged defendants C.W. and Cannon with participation in a continuing criminal enterprise, in violation of 21 U.S.C. § 848, from 1976 through 1980. In order to sustain a conviction under section 848, the government must prove that the defendant received "substantial income" from the criminal enterprise. 21 U.S.C. § 848(b)(2)(B).
 
 
 40
 Counts Five through Seven charged Defendant C.W. with failure to file federal income tax returns to report his income for the years of 1974, 1975, and 1976. The indictment further charged that C.W. received income during those years of $11,700.00, $22,400.00, and $47,582.00 respectively.
 
 
 41
 Thus, the issue under Rule 8 is whether common elements of proof supported the joinder of these offenses. The elements of proof for failure to file an income tax return include that the defendant had sufficient income that filing was necessary, and that the defendant failed to file a return. Proof of a continuing criminal enterprise requires evidence of substantial income therefrom. Clearly these offenses involved the introduction of common proofs.
 
 
 42
 Evidence of large expenditures tended to show that C.W. had sufficient income to necessitate filing of a tax return. Evidence that he failed to file such a return led to the permissible inference that he had no bona fide income source to support these expenditures. See United States v. Hinton, 543 F.2d 1002 (2d Cir.1976). Given the high degree of relatedness between these proofs, we hold that joinder under Rule 8 was not improper as a matter of law.[3]
 
 
 43
 Where joinder of offenses is proper under Rule 8, a motion for severance under Rule 14 will be granted only where defendants are able to show that joinder is prejudicial. Defendants have failed to make that showing with respect to the offenses joined here.
 
 B. Joinder of Defendants
 
 44
 No claim is made here that defendants were misjoined under Federal Rule of Criminal Procedure 8(b) as a matter of law. The issue before us is merely whether the trial court abused its discretion in refusing to grant Rule 14 motions for severance.
 
 
 45
 Defendants allege that joinder prejudiced them in two regards. First, defendants claim that the establishment of C.W.'s financial status involved the introduction of proof which impermissibly allowed the jury to infer that all of the defendants gained substantial income from their criminal activities. Second, defendants claim that the prejudicial pretrial publicity warranted severance.
 
 
 46
 Both of these claims lack merit. Evidence of the income received by defendants from their criminal activities would have been introduced in any event to prove their participation in a continuing criminal enterprise. And, any potential prejudice from the extensive pretrial publicity in this case was avoided by the trial court's voir dire of the jury. Accordingly, we hold that the district court did not abuse its discretion by failing to grant defendants' motions for severance.
 
 VI. ALLEGATION OF JUROR MISCONDUCT
 
 47
 Defendants next contend that the district court committed reversible error by failing to hold an evidentiary hearing concerning the defendants' allegation that a government witness had spoken with one of the jurors. This contention is without merit.
 
 
 48
 The defendants alleged that Catherine Ferguson, a prosecution witness, communicated with Juror Figurski during a sidebar. On the basis of this allegation, counsel for one of the defendants moved for a mistrial. The district court denied this motion.
 
 
 49
 The denial of the motion for mistrial, however, did not come until after the district court had questioned Ferguson outside of the jury's presence; Ferguson denied that she had been talking with the juror, she explained that she had merely been mumbling to herself. Ferguson's explanation was corroborated by the court reporter. Defense counsel then were allowed to voir dire two of the defendants concerning their observation of Ferguson's conduct.
 
 
 50
 We believe that the trial judge conducted the necessary investigation into the allegation of juror misconduct. The trial judge's determination that there had been no communication between Ferguson and Figurski was supported adequately by the testimony of Ferguson and the court reporter. Thus, it was not necessary to question Figurski.
 
 
 51
 Because the trial court properly found there had been no private communication between witness and juror, the cases cited by defendants to support the need for an evidentiary hearing are inapt. It is true, as defendants argue, that private communications between jurors and others are presumptively prejudicial. There can be no prejudice, however, in the absence of any such communication. Accordingly, we hold that the procedure followed by the district court in investigating the allegation of juror misconduct in this case was proper; defendants' claim of reversible error must fail.
 
 VII. LOVE'S PRIOR CONVICTIONS
 
 52
 The principal government witness in this case was Howard Love. Love was the sole conspirator to enter a guilty plea; in exchange for the plea the prosecution agreed to make no specific sentencing recommendation and to make the extent of Love's cooperation known to the sentencing judge. Because of the importance to the prosecution of Love's testimony, impeaching Love's credibility was of critical importance to the defendants. Thus, defendants sought to introduce all of Love's prior convictions; the first conviction dating back to 1948. The district court, however, disallowed introduction of Love's pre-1965 convictions.[4] Defendants now contend that the trial court erred by excluding evidence of these convictions and that the trial court failed to explain adequately the basis for its ruling. Neither of these contentions has merit.
 
 
 53
 Federal Rule of Evidence 609 defines when a party may use a prior conviction in order to impeach a witness. Under that rule
 
 
 54
 [e]vidence of a conviction ... is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.
 
 
 55
 FED.R.EVID. 609(b) (emphasis added). Thus, Love's pre-1965 convictions were inadmissible in the absence of a finding by the district court that their probative value outweighed their prejudicial effect.[5]
 
 
 56
 The district court properly found that the interests of justice in this case did not require admission of Love's stale convictions. As noted by the trial judge, evidence of Love's four convictions in 1965, 1971, 1978, and 1980 was sufficient to provide a record basis for defendants' argument that Love had a motive for testifying for the government. We agree with the district court that evidence of Love's earlier convictions would have been cumulative, and thus could not give rise to a claim of exceptional circumstances warranting their admission.
 
 VIII. DEFENSE WITNESS IMMUNITY
 
 57
 We summarily reject defendants' claim that their compulsory process rights under the sixth amendment were violated by the court's failure to order the conferral of use immunity on certain defense witnesses. The trial judge lacks authority to request immunity. United States v. Frans, 697 F.2d 188, 191 (7th Cir.1983). That power belongs exclusively to the executive branch. 18 U.S.C. § 6003 (1970). And, we will not review a prosecutor's immunization decisions in the absence of substantial evidence showing that the prosecutor's actions amounted to a clear abuse of discretion violating the due process clause. United States v. Frans, 697 F.2d at 191; accord In re Perlin, 589 F.2d 260, 269 (7th Cir.1978). Defendants have made no such showing here. Thus, we hold that the district court properly denied defendants' request to order use immunity for certain witnesses, and that there was no abuse of discretion in the government's decision not to confer immunity.
 
 IX. MOSBY'S EVIDENTIARY CLAIM
 
 58
 Defendant Mosby sought to introduce certain evidence in his defense by stipulation. This evidence involved proof of Mosby's heart condition and his concomitant inability to hold a regular job. The district court deemed this evidence irrelevant and denied its admission. Mosby now contends that the district court's refusal to admit this evidence constituted an abuse of discretion.
 
 
 59
 Mosby contends that this evidence was relevant because if Mosby had testified at trial the evidence could have been used to "humanize" him to the jury. Br. for Appellant Mosby at 15. It is true that the evidence of Mosby's personal background would have been admissible if Mosby had taken the stand in his own behalf, but he did not testify. Thus, defendant is seeking to accomplish indirectly what he cannot do directly--to present evidence favorable to himself without subjecting himself to the possible dangers of cross-examination. Cf. United States v. Lyon, 397 F.2d 505 (7th Cir.), cert. denied, 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968) (witness cannot invoke the privilege against self-incrimination on cross-examination as to matters testified to on direct).
 
 
 60
 The district court acted within its discretion when it refused to admit the personal background evidence offered by way of stipulation. Mosby's claim of error is therefore rejected.
 
 X. SUFFICIENCY OF THE EVIDENCE
 
 61
 Defendants Rhone, Mosby, and Barnett all urge that the evidence presented in this case was not sufficient to support their convictions. Barnett, in particular, argues that this conviction must be reversed because it is based on "inconsistent testimony, given by admitted coconspirators, perjurers, and informants." Br. for Appellant Barnett at iv.
 
 
 62
 Our task is not to weigh the evidence or to assess the credibility of the witnesses. The verdict of the jury must be sustained if there was substantial evidence, viewed in the light most favorable to the government, to support it. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); United States v. Frans, 697 F.2d 188, 190 (7th Cir.1983).
 
 
 63
 We have examined the record in this case, and find that each of the defendants stands convicted on the basis of substantial evidence. Accordingly, we decline to disturb the jury verdict and the judgment entered thereon.
 
 XI.
 
 64
 Having examined each of the arguments raised by defendants on this appeal we find none to have merit. Thus, for the reasons set forth above, defendants' convictions are
 
 
 65
 AFFIRMED.
 
 
 
 *
 The Honorable William J. Jameson, Senior Judge of the United States District Court for the District of Montana, is sitting by designation
 
 
 [1]
 Defendants reliance on United States v. Disston, 582 F.2d 1108 (7th Cir.1978), is misplaced. Disston stood trial with a codefendant, Camp, who was a government informer. The government never disclosed Camp's informer status, and maintained throughout the trial that it had no electronic recordings of conversations to which Camp was a party. Disston sought post-trial relief based on the then newly discovered evidence that Camp was an informer who may have provided prejudicial information regarding Disston or Disston's trial strategy to the government. This court held that under those circumstances an evidentiary hearing was necessary to determine whether Disston's conviction should be reversed
 By contrast, the case before us involved a disclosed tape recording which was reviewed in camera by the trial court. The trial court found that the recording contained nothing prejudicial to defendants' rights in this case. This in camera proceeding was sufficient to safeguard defendants' interests. See also United States v. Disston, 582 F.2d 1108, 1111 n. 9 (7th Cir.1978) (limiting the evidentiary hearing requirement to cases where the trial judge has determined that electronically recorded conversations should be turned over to the defendant).
 
 
 [2]
 The rule provides that:
 Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
 FED.R.CRIM.P. 8(a).
 
 
 [3]
 Defendants make much of the fact that the income tax charges included two years preceding the charged dates of the continuing criminal enterprise. Under the circumstances, we find this fact insignificant. First, there was a clear connection between the 1976 tax law violation and the continuing criminal enterprise. Second, evidence was introduced in connection with the narcotics charges showing that the criminal enterprise was in existence during 1974 and 1975. Accordingly, the common elements of proof standard was satisfied as to all counts of the indictment
 
 
 [4]
 Love's pre-1965 convictions consisted of: (1) a military conviction for larceny in 1948; (2) a 1953 conviction for armed robbery; and (3) a 1958 conviction for three armed robberies
 
 
 [5]
 The September 1970 release date for confinement imposed on Love's 1965 conviction brought it closer to the parameters of the ten-year rule. Accordingly, the district court exercised its discretion to allow use of this conviction for impeachment