**UNITED STATES of America,**
**Plaintiff,**

v.

**Gary Cortez QUILLING, Defendant.**

No. 99–30059.

United States District Court,
S.D. Illinois,
East St. Louis Division.

Aug. 28, 2000.

Richard H. Lloyd, Fairview Heights, IL, Patty Merkamp Stemler, David S. Kris, Washington, DC, for plaintiff.

Renee E. Schooley, Lawrence J. Fleming, East St. Louis, IL, for defendant.

## OPINION

RICHARD MILLS, District Judge.

[I]t is the law's objective to guard jealously the sanctity of the jury's right to operate as freely as possible from outside unauthorized intrusions purposefully made.

*Remmer v. United States,* 350 U.S. 377, 382, 76 S.Ct. 425, 100 L.Ed. 435 (1956).

### I. BACKGROUND

On July 9, 1999, a jury found Gary Cortez Quilling guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Prior to the sentencing hearing, Quilling's counsel received notification from Chief United States District Judge J. Phil Gilbert that United States District Judge Paul E. Riley may have had *ex parte* communications with the jury during its deliberations in Quilling's case.[1] After an investigation, Quilling filed a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33.[2]

Therein, Quilling argues that, because he was unaware of the *ex parte* communications until after the jury had reached its verdict, Judge Riley's *ex parte* communications with the jury constitute newly discovered evidence entitling him to a new trial. Quilling contends that the *ex parte* communication occurred when Judge Riley improperly responded to a jury question without first consulting all counsel and him. Quilling claims that this improper contact between Judge Riley and the jury (along with any others which may have occurred) deprived him of his Sixth Amendment right to a fair trial and of his right pursuant to Federal Rule of Criminal

---

1. Judge Riley presided over Quilling's trial. Judge Riley is no longer an active district judge due to a medical disability which renders him unable to efficiently discharge the duties of his office.

2. Chief Judge Gilbert assigned the above-captioned case to this Court-along with six other criminal cases in which Judge Riley allegedly had *ex parte* communications with the juries-after all of the district judges in the United States District Court for the Southern District of Illinois recused themselves.

Procedure 43(a) to be present at every stage of his trial. Quilling asserts that, because the Government cannot overcome its burden of showing that Judge Riley's contact with the jury was harmless, the Court should either grant him a new trial or dismiss the indictment against him based upon his Fifth Amendment right to be free from double jeopardy.

## II. APPLICABLE LAW

Federal Rule of Criminal Procedure 33 provides that "the court on motion of a defendant may grant a new trial to that defendant if required in the interests of justice." *Id.* "Probably the most frequent basis for a Rule 33 motion-and the only one specifically mentioned in the rule-is one 'based on the ground of newly discovered evidence.'" *United States v. Woolfolk,* 197 F.3d 900, 905 (7th Cir.1999), quoting *United States v. Kamel,* 965 F.2d 484, 490 (7th Cir.1992). The United States Court of Appeals for the Seventh Circuit has explained:

> To receive a new trial based on newly discovered evidence, the defendant must demonstrate that the evidence (1) came to their knowledge only after trial; (2) could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial.

*Woolfolk,* 197 F.3d at 905.

However, when the basis for a new trial is newly discovered evidence that the trial judge has had improper contact with a juror or jurors, the test is somewhat different because "[a]ny *ex parte* meeting or communication between the judge and the foreman of a deliberating jury is pregnant with possibilities of error." *United States v. United States Gypsum Co.,* 438 U.S. 422, 460, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). As the United States Supreme Court has opined:

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954), citing *Mattox v. United States,* 146 U.S. 140, 150, 13 S.Ct. 50, 36 L.Ed. 917 (1892). Moreover, the Seventh Circuit has stated that "the unusual practice of a judge entering the jury room to speak privately with jurors is almost certain to run afoul of a defendant's right to be present during trial proceedings." [3] *United States v. Smith,* 31 F.3d 469, 471 (7th Cir.1994).

Before the Government is put to its burden of showing that an improper contact by an outsider with the jury is harmless, however, a defendant must first establish that an *ex parte* communication occurred. *See Owen v. Duckworth,* 727 F.2d 643, 646 (7th Cir.1984)(holding that the defendant bears the burden of proving outside contact with the jury); *see also United States v. Wilson,* 715 F.2d 1164, 1172 (7th Cir.1983)(holding that while "private communications between jurors and others are presumptively prejudicial[,][t]here can be no prejudice ... in the absence of any such communication."); *see also United States v. Heater,* 63 F.3d 311, 321 (4th Cir.1995)(holding that the defendant bears the initial burden of demonstrating that the improper juror contact occurred, and only if the contact is established must the Government demonstrate

---

**3.** A defendant's right under Federal Rule of Criminal Procedure 43(a) to be present at every stage of his trial is "more far-reaching than the right of presence protected by the Constitution." *United States v. Brown,* 571 F.2d 980, 986 (6th Cir.1978).

absence of prejudice). The moving defendant must meet this burden by a preponderance of the evidence. *United States v. Caro–Quintero,* 769 F.Supp. 1564, 1580 (C.D.Cal.1991); *see also United States v. Tarpley,* 945 F.2d 806, 811 (5th Cir.1991)(holding that the defendant must show that "improper communication of extrinsic information had likely occurred."); *see also United States v. Cousins,* 842 F.2d 1245, 1247 (11th Cir.1988)(holding that a defendant must make a "colorable showing" that an *ex parte* communication occurred).

Furthermore, "[a] determination of jury prejudice is complicated in the federal courts by the proscription against questioning jurors directly about the effect of the outside contact on their deliberations." *Owen,* 727 F.2d at 646. Federal Rule of Evidence 606(b) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

*Id.* Thus,

> [r]ather than question the jurors directly, a district court must make findings of fact at two separate levels. First, the district court must find the basic, or subsidiary, facts-*e.g.,* the nature, con-

tent, and extent of the extra-judicial contact. Based on its findings of subsidiary facts, the district court must then make the ultimate factual determination: whether the contact likely affected the juror's impartiality.

*Owen,* 727 F.2d at 646.

## III. ANALYSIS

In the instant case, the Government concedes that Quilling has met his burden of establishing that an *ex parte* communication occurred between Judge Riley and the jury and rightfully so. In her affidavit, Brenda Osborn (Judge Riley's court reporter) testified that she observed Judge Riley telling the jurors in Quilling's case that "this is ridiculous." Osborn testified that she is convinced that when Judge Riley was referring to "this", he was referring to the merits of the above-captioned case. Osborn also testified that Judge Riley made derogatory remarks to the jury during this conversation regarding the Government's attorney.[4] Based upon Osborn's affidavit, the Court finds that Quilling has made a colorable showing that an *ex parte* communication occurred between Judge Riley and the jury and that a presumption of prejudice to Quilling has attached as a result. *Cousins,* 842 F.2d at 1247.

The Government also concedes that it cannot overcome its burden of establishing that this improper contact was harmless, and the Court agrees. *Remmer,* 347 U.S. at 229, 74 S.Ct. 450. The Government's burden in this regard is a "heavy" one. *Id.; Schaff v. Snyder,* 190 F.3d 513, 533–34 (7th Cir.1999). The Government must demonstrate "that there exists no 'reasonable possibility that the jury's verdict was influenced by an improper communication.'" *United States v. Cheek,* 94 F.3d 136, 141 (4th Cir.1996), quoting *Stephens v. South Atl. Canners, Inc.,* 848 F.2d 484, 488–89 (4th Cir.1988); *see United States v.*

---

4. Sheila Hunsicker (Judge Riley's permanent law clerk and the law clerk assigned to this case) has, in her own affidavit, corroborated Osborn's testimony regarding this incident.

*Carter,* 973 F.2d 1509, 1515 (10th Cir. 1992), quoting *United States v. de Hernandez,* 745 F.2d 1305, 1310 (10th Cir.1984)(holding that in order "[t]o avoid a new trial under the plain error analysis, the record must completely 'negative[ ] any reasonable possibility of prejudice arising from such error.' "). The Government admits that it cannot make such a showing, and therefore, the Court finds that Judge Riley's *ex parte* communication with the jury likely affected the jury's impartiality. *Owen,* 727 F.2d at 646; *see United States v. Touloumis,* 771 F.2d 235, 242 (7th Cir.1985) (disapproving "of a trial judge's procedure in entering a jury room, despite agreement by both counsel and the presence of a court reporter, to give a supplemental instruction after the jury had already begun its deliberations.").

■ A criminal defendant has a right to a fair trial, U.S. CONST. amend. VI, and a right to be present at every stage of the trial. Fed. R.Crim. Pro. 43(a); *see United States v. Coffman,* 94 F.3d 330, 335–36 (7th Cir.1996)(holding that "[t]he defendant is entitled to be present at all stages of his trial, ... and a judge's response to a note from the jury is one of those stages."); *see also United States v. Pressley,* 100 F.3d 57, 59–60 (7th Cir.1996)(holding that Rule 43(a)entitles a defendant to be present at all stages of his trial and that "[c]ommunication between the judge and the jury, or a single juror, is one of those stages."). Judge Riley's *ex parte* communication with the jury deprived Quilling of both of these rights, and therefore, he is entitled to a new trial.

■ However, the Court does not believe that Quilling's retrial is barred by the Fifth Amendment's Double Jeopardy Clause. As the Government notes, it is well established that "the Double Jeopardy Clause 'imposes no limitations whatever upon the power to retry a defendant who has succeeded in getting his first conviction set aside.' " *Tibbs v. Florida,* 457 U.S. 31, 40, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), quoting *North Carolina v. Pearce,*

395 U.S. 711, 720, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In fact, the Supreme Court has explained that a motion for a new trial "obviates any later objection the defendant might make on the ground of double jeopardy." *United States v. Smith,* 331 U.S. 469, 474, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947), citing *Murphy v. Massachusetts,* 177 U.S. 155, 160, 20 S.Ct. 639, 44 L.Ed. 711 (1900); *see Rivera v. Sheriff of Cook County,* 162 F.3d 486, 487–88 (7th Cir.1998)(holding that "if after being found guilty the defendant seeks a retrial in the interest of justice under Fed.R.Crim.P. 33 ... the double jeopardy clause does not prevent a court from fulfilling the accused's request."). Accordingly, although Quilling is entitled to a new trial, his second trial will not violate his Fifth Amendment right against double jeopardy.

*Ergo,* Defendant's Motion for a New Trial is ALLOWED.