Gary Cortez **QUILLING**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

**No. 02–900.**

United States District Court,
S.D. Illinois,
East St. Louis Division.

Dec. 18, 2002.

---

Gary Cortez Quilling, Greenville, IL, pro se.

Richard H. Lloyd, Asst. U.S. Attorney, Fairview Heights, IL, for Respondent.

## OPINION

RICHARD MILLS, District Judge.

Two trials by two different juries and two different judges resulted in Quilling's convictions.

One appeal affirmed his convictions and sentence.

Now, Quilling has filed a motion to vacate, set aside, or correct his convictions and sentence pursuant to 28 U.S.C. § 2255.

It is the procedural end of the line for Petitioner Quilling.

Petition denied.

## I. BACKGROUND[1]

On July 9, 1999, a jury found Petitioner guilty of one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). However, Petitioner was not sentenced on this conviction; rather, on August 28, 2000, the Court allowed Petitioner's motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. *United States v. Quilling*, 109 F.Supp.2d 1009 (S.D.Ill.2000). Thereafter, the Court set the matter for a new trial.

On September 21, 2000, a federal grand jury superseded the Indictment returned against Petitioner to add a second count alleging Petitioner to have been a felon in possession of firearm ammunition in violation of 18 U.S.C. § 922(g)(1).[2] On October

---

1. The Court will assume a familiarity with the facts as presented in this Court's and the United States Court of Appeals for the Seventh Circuit's earlier Opinions. *See ·United States v. Quilling*, 109 F.Supp.2d 1009 (S.D.Ill.2000), and *United States v. Quilling*, 261 F.3d 707 (7th Cir.2001).

2. Actually, this was a Second Superseding Indictment.

30, 2000, a jury found Petitioner guilty of both Counts charged in the Indictment. Accordingly, on January 4, 2001, the Court sentenced Petitioner to 78 months of imprisonment on each Count of conviction and ordered his sentences to be served concurrently.

On August 20, 2001, the United States Court of Appeals for the Seventh Circuit affirmed Petitioner's convictions and sentence. *United States v. Quilling,* 261 F.3d 707 (7th Cir.2001). On November 13, 2001, the United States Supreme Court denied Petitioner's petition for a writ of *certiorari. Quilling v. United States,* 534 U.S. 1034, 122 S.Ct. 576, 151 L.Ed.2d 447 (2001). On July 30, 2002, Petitioner filed the instant petition pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.

## II. PETITIONER'S CLAIMS

Petitioner now raises three reasons why his convictions and sentence should be vacated, set aside, or corrected pursuant to 28 U.S.C. § 2255.

*First,* Petitioner argues that his convictions and sentence should be vacated, set aside, or corrected because the Court engaged in judicial misconduct prior to his trial.

*Second,* Petitioner contends that he is entitled to relief pursuant to 28 U.S.C. § 2255 based upon prosecutorial misconduct.

*Third,* Petitioner argues that his convictions and sentence should be vacated, set aside, or corrected because he received ineffective assistance of counsel in violation of his Sixth Amendment rights.

Accordingly, Petitioner asks the Court to conduct an evidentiary hearing and to, thereafter, either grant him a new trial or vacate his convictions and sentence outright.

## III. ANALYSIS

Ordinarily, claims not raised on appeal are procedurally defaulted. *Barker v. United States,* 7 F.3d 629, 632 (7th Cir.1993). "A § 2255 petition is not a substitute for direct appeal." *Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir. 1996), *citing Theodorou v. United States,* 887 F.2d 1336, 1339 (7th Cir.1989). However, constitutional claims may be raised for the first time in a collateral attack if the petitioner can show cause for the procedural default and prejudice from the failure to appeal. *United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *McCleese v. United States,* 75 F.3d 1174, 1177 (7th Cir.1996). If a petitioner is unable to demonstrate both cause and prejudice, Petitioner may be able to obtain habeas review only if he can persuade the court that the dismissal of his petition would result in a fundamental miscarriage of justice. *Murray v. Carrier,* 477 U.S. 478, 495, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

### A. *JUDICIAL MISCONDUCT*

Petitioner did not raise his claim of judicial misconduct on appeal, and thus, he has procedurally defaulted this claim. *Barker,* 7 F.3d at 632. Therefore, Petitioner must establish both cause for and prejudice from his failure to appeal this issue in order to prevail on his § 2255 petition *Frady,* 456 U.S. at 167–68, 102 S.Ct. 1584. Petitioner has failed to do so.

In his reply to the Government's response to his § 2255 petition, Petitioner contends that the Court's rescheduling of his trial by sixteen days prejudiced him because, if he would have had more time to study and prepare for the trial, then he could have contacted his witnesses and could have better prepared his defense.

However, the Court's rescheduling of the trial actually gave Petitioner more

time to prepare, not less. The Court moved Petitioner's trial from October 10, 2002, to October 26, 2002. As such, Petitioner has failed to show that the Court's rescheduling of his trial prejudiced him in any way, and therefore, Petitioner has procedurally defaulted his judicial misconduct claim.[3]

To the extent that he is arguing that the Court's rescheduling of his trial prejudiced him in that it allowed the two Counts charged against him in the Second Superseding Indictment to be tried together, Petitioner did argue this point on appeal, and thus, he has not procedurally defaulted this claim. However, the Seventh Circuit held that the Court did not err in denying Petitioner's motion to sever. *Quilling,* 261 F.3d at 713–15.

■ "[O]nce this court [the Seventh Circuit] has decided the merits of a ground of appeal, that decision establishes the law of the case and is binding on a district judge asked to decide the same issue in a later phase of the same case, unless there is some good reason for re-examining it." *United States v. Mazak,* 789 F.2d 580, 581 (7th Cir.1986); *see Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)(holding that "the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). "The doctrine, however, allows some flexibility, permitting a court to revisit an issue if an intervening change in the law, or some other special circumstance, warrants reexamining the claim." *United States v. Thomas,* 11 F.3d 732, 736 (7th Cir.1993). "It [the law of the case doctrine] will not be enforced where doing

so would produce an injustice." *Mazak,* 789 F.2d at 581.

■ Here, the Court finds no good reason to re-examine the severance issue. The Seventh Circuit fully addressed Petitioner's arguments with respect to the Court's denial of his motion to sever and found them to be lacking. Petitioner has not cited any intervening change in the law, has not tendered any new evidence with which to convince the Court that its previous ruling was in error, and has not pointed the Court to any special circumstance which warrants re-examining this issue. Therefore, to the extent that Petitioner is asking the Court to vacate, set aside, or correct his sentence based upon his claim of judicial misconduct, his § 2255 petition is denied.

### B. *PROSECUTORIAL MISCONDUCT*

Petitioner has cited four instances of misconduct by the prosecutor which he asserts entitles him to relief pursuant to 28 U.S.C. § 2255. *First,* Petitioner claims that law enforcement officials failed to timely give him his *Miranda* warnings. *Second,* Petitioner contends that the Government's attorney tendered false and misleading evidence to the jury during his trial in order to obtain his conviction. *Third,* Petitioner argues that the Government sought and obtained a Superseding Indictment because he exercised his Constitutional right to a jury trial. *Fourth,* Petitioner asserts that the Government's attorney breached the agreement which the prosecutor had made with him and his counsel regarding the tendering of an expert witness by the Government (who would testify that Petitioner's fingerprints

---

**3.** Because the Court has found that Petitioner has failed to establish prejudice for his judicial misconduct claim, the Court need not address whether Petitioner has established

cause for his failure to appeal this claim. *Momient–El v. DeTella,* 118 F.3d 535, 542 n. 7 (7th Cir.1997).

were not found on the gun at issue in Count I of the Indictment) in exchange for his signing four stipulations which were used by the Government at trial.

Like his judicial misconduct claim, Petitioner did not raise his prosecutorial misconduct claim on appeal, and so, he must establish cause and prejudice in order to succeed on his claim. The Court finds that Petitioner has suffered no prejudice as a result of any actions taken by the Government's attorney.

### 1. *Miranda Warning*

As the Government notes in its response to Petitioner's § 2255 petition, Petitioner has denied in his petition that he made any statement to the Deputies of the United States Marshal's Service ("the Deputies") on September 3, 1998. If Petitioner did not make any statement(s) on the night in question, then it was not error for the Deputies not to give him his *Miranda* warnings. *See United States v. Wright,* 971 F.2d 176, 180 (8th Cir.1992)(finding no Fifth Amendment violation where the defendant "made no statements to police, from the time he was handcuffed until he was read *Miranda* warnings about five to ten minutes later. Police are required to issue *Miranda* warnings only prior to custodial interrogation."); *see also United States v. Horton,* 3 Fed.Appx. 158, 159 (4th Cir.2001)(holding that, because the defendant did not make any statements upon his arrest, there was no violation of his rights based upon the officer's failure to give the defendant his *Miranda* warnings).

Alternatively, Petitioner argues that, even if he did make the statements attributed to him by the Deputies on the way to the Marshal's office, the Government violated his Fifth Amendment right against self-incrimination because the Deputies did not give him his *Miranda* warnings prior to his making the incriminating statement. However, if the Court is to assume that Petitioner made the incriminating statement attributed to him by the Deputies, then it must also assume that Petitioner made the statements under the circumstances described by the Deputies during their testimony at the trial.[4]

Specifically, although Petitioner admitted to the Deputies that he possessed the gun prior to being given his *Miranda* warnings, he made this admission spontaneously and not as a result of being interrogated. Therefore, *Miranda* warnings were not yet necessary. *See United States v. Abdulla,* 294 F.3d 830, 834–35 (7th Cir.2002)(holding that "a suspect must be both 'in custody' and subjected to 'interrogation' before the *Miranda* warnings requirement is triggered."); *see also Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)(defining "interrogation" to mean "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."); *see also United States v. Westbrook,* 125 F.3d 996, 1002 (7th Cir.1997)(interpreting the *Innis* test as "whether a reasonable objective observer would have believed that the ... question[ ] claimed by [the defendant] to have been unlawful interrogation [was] in fact 'reasonably likely to elicit' an incriminating response."). Accordingly, Petitioner cannot show prejudice from the Deputies' failure to give him his *Miranda* warnings prior to his making an incriminating statement, and he cannot show any prejudice from the Government's

---

4. The Court uses the term "assume" merely in keeping with Petitioner's § 2255 petition. The jury has found that he possessed the gun in question on September 3, 1998, and that he made the statement claiming possession of the gun. *Quilling,* 261 F.3d at 713.

use of his statement (through the Deputies' testimony) at trial.

### 2. *Use of False Evidence*

Furthermore, Petitioner has not shown any prejudice from the use of the Deputies' testimony at trial. Petitioner contends that the Deputies gave false testimony at trial regarding the statement which he "allegedly" made about possessing the gun on September 3, 1998, regarding the placement of the gun in the car which he was driving that night, regarding the type of vehicle which he was driving, and regarding LaDonna Dixon's consent to search the house at 9½ Cahokia Street, Cahokia, Illinois.

In order "[t]o establish a prima facie case that a conviction should be vacated because obtained through the use of perjured testimony, a petitioner must show that the testimony was in fact false and the government used it with actual or constructive knowledge of the falsity." *Holleman v. United States*, 721 F.2d 1136, 1138 (7th Cir.1983). Petitioner has failed to convince the Court that the Deputies gave perjured testimony. In any event, even assuming, *arguendo*, that they did, Petitioner has not even alleged that the prosecutor tendered their testimony with actual or constructive knowledge of its falsity. Accordingly, the Court finds that Petitioner has failed to show prejudice from the Government's use of the Deputies' testimony at trial.

### 3. *Vindictive Prosecution*

The Court also finds that Petitioner was not subjected to any vindictive prosecution by the Government. Contrary to Petitioner's argument otherwise, the United States Supreme Court has explained:

> In declining to apply a presumption of vindictiveness, the Court recognized that "additional" charges obtained by a prosecutor could not necessarily be charac-

terized as an impermissible "penalty." Since charges brought in an original indictment may be abandoned by the prosecutor in the course of plea negotiation—in often what is clearly a "benefit" to the defendant—changes in the charging decision that occur in the context of plea negotiation are an inaccurate measure of improper prosecutorial "vindictiveness." An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.

*United States v. Goodwin*, 457 U.S. 368, 378–80, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)(footnotes omitted); *see United States v. Napue*, 834 F.2d 1311, 1330 (7th Cir.1987)(noting "that vindictive prosecution claims are less likely to be successful, and a presumption of vindictiveness is unwarranted, in a pretrial setting" and "that the prosecutor must be allowed broad discretion in selecting the charges against the accused."). "A defendant seeking to prove prosecutorial vindictiveness for a decision to indict must present objective evidence showing genuine vindictiveness." *United States v. O'Hara*, 301 F.3d 563, 571 (7th Cir.2002).

Here, Petitioner has failed to offer any objective proof that the Government maintained any vindictiveness in superseding his Indictment to add an additional charge against him. Accordingly, Petitioner has failed to establish prejudice from his failure to raise the issue of prosecutorial misconduct on appeal.

#### 4. *Breach of Agreement*

■ Lastly, the Court finds that Petitioner has failed to establish prejudice as a result of the Government's breach of its agreement with him. Defendant is correct that the Government technically breached its agreement with him by failing to call an expert witness to testify that Petitioner's fingerprints were not found on the firearm at issue in Count I of his Indictment in exchange for Petitioner's signing four stipulations used by the Government during the trial.

However, as the Court has previously noted in another Order, given the weight of the evidence against Petitioner, the Court does not believe that fundamental fairness dictates that Petitioner receive a new trial based upon the Government's failure to tender an expert fingerprint witness as it had agreed to do. *United States v. Gooch,* 120 F.3d 78, 81 (7th Cir.1997). Moreover, while it would have been preferable for the Government to have called its expert witness as promised, the Court cannot say that its failure to do so constitutes prejudice which entitles Petitioner to the relief which he seeks.

Petitioner was present throughout his trial and had ample opportunity to present evidence that his fingerprints were not found on the gun at issue. He could have asked the Government to enter into such a stipulation, reminded the Government of its obligation to call its expert witness prior to the Government resting its case, or called the Government's witness as his own. But, Defendant chose to remain silent on this issue until after the trial had concluded.

More importantly, remaining silent on the fingerprint issue worked to Petitioner's advantage as his theory of the case was that the gun belonged to Frank Jefferson. Since Jefferson's fingerprints were not found on the gun either, it could have been a tactical mistake for Petitioner or his counsel to have pressed the fingerprint issue.

Accordingly, the Court finds that Petitioner has failed to establish prejudice from his failure to appeal his procedurally defaulted prosecutorial misconduct claim and that, to the extent that his § 2255 petition is based upon a claim of prosecutorial misconduct, his petition to vacate, set aside, or correct his sentence is denied.

#### C. *INEFFECTIVE ASSISTANCE OF COUNSEL*

Finally, Petitioner argues that the Court should vacate, set aside, or correct his sentence because he received ineffective assistance of counsel in violation of his Sixth Amendment rights. Petitioner contends that his counsel was ineffective for five reasons.

*First,* Petitioner alleges that he received ineffective assistance of counsel in that his attorney failed to conduct a pretrial investigation. *Second,* Petitioner complains that his attorney failed to file a motion to suppress the statement which he made to the Deputies. *Third,* Petitioner argues that his attorney should have moved to dismiss the Indictment based upon vindictive prosecution. *Fourth,* Petitioner contends that his attorney was ineffective for failing to move to dismiss the Indictment based upon the Government's breach of its agreement with him. *Fifth,* Petitioner claims that he received ineffective assistance of counsel because his attorney failed to file a motion to dismiss the Indictment based upon a claim of double jeopardy.

■ Petitioner did not advance an argument of ineffective assistance of counsel on appeal. However, because " '[t]he preferred method for raising a claim of ineffective assistance of counsel is either by bringing a motion for new trial or a request for collateral relief under 28 U.S.C. § 2255' ", *United States v. Woolley,* 123

F.3d 627,'634 (7th Cir.1997), *quoting United States v. Wiman,* 77 F.3d 981, 988 (7th Cir.1996) (footnote omitted), a petitioner may properly raise an ineffective assistance of counsel claim for the first time in a § 2255 petition, and a claim of ineffective assistance of counsel can satisfy the cause component necessary to overcome procedural default. *Fern v. Gramley,* 99 F.3d 255, 259 n. 4 (7th Cir.1996).

To establish a claim of ineffective assistance of counsel, a petitioner must show two things. *First,* the petitioner must show that his counsel performed in a deficient manner. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representations fell below an objective standard of reasonableness." *Id.* at 687–688, 104 S.Ct. 2052. A court, in reviewing a petitioner's claim of ineffective assistance of counsel, must give great deference to the attorney's performance due to the distorting effects of hindsight. *Id.* at 689, 104 S.Ct. 2052. In addition, the petitioner must overcome a strong presumption that the attorney's conduct falls within a wide range of reasonable professional assistance. *Id.*

*Second,* the petitioner must show that counsel's deficient performance prejudiced her. *Id.* at 687, 104 S.Ct. 2052. A petitioner must show that counsel's errors "actually had an adverse effect on the defense." [5] *Id.* at 693, 104 S.Ct. 2052.

In the instant case, four of Petitioner's five grounds proffered in support of his claim of ineffective assistance of counsel are easily resolved (although the first and second grounds are somewhat intertwined). As for Petitioner's second, third, fourth, and fifth grounds tendered in support of his ineffective assistance claim, the Court cannot say that Petitioner's counsel's performance significantly prejudiced him or that his counsel's representations fell below an objective standard of reasonableness.

*1. Double Jeopardy*

 As for his double jeopardy claim, Petitioner's counsel was clearly not ineffective for failing to seek a dismissal of the Indictment upon that basis. As the Court explained in its Opinion allowing Petitioner's motion for a new trial:

> However, the Court does not believe that Quilling's retrial is barred by the Fifth Amendment's Double Jeopardy Clause. As the Government notes, it is well established that "the Double Jeopardy Clause 'imposes no limitations whatever upon the power to retry a defendant who has succeeded in getting his first conviction set aside.'" *Tibbs v. Florida,* 457 U.S. 31, 40, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), *quoting North Carolina v. Pearce,* 395 U.S. 711, 720, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In fact, the Supreme Court has explained that a motion for a new trial "obviates any later objection the defendant might make on the ground of double jeopardy." *United States v. Smith,* 331 U.S. 469, 474, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947), *citing Murphy v. Massachusetts,* 177 U.S. 155, 160, 20 S.Ct. 639, 44 L.Ed. 711 (1900); *see Rivera v. Sheriff of Cook County,* 162 F.3d 486, 487–88 (7th Cir.1998)(holding that "if after being found guilty the defendant seeks a retrial in the interest of justice under Fed. R.Crim.P. 33 ... the double jeopardy clause does not prevent a court from fulfilling the accused's request."). Ac-

---

**5.** The Supreme Court has held that a defendant must show that counsel's errors rendered the proceedings "fundamentally unfair or unreliable" in addition to simply showing prejudice. *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

cordingly, although Quilling is entitled to a new trial, his second trial will not violate his Fifth Amendment right against double jeopardy.

*Quilling*, 109 F.Supp.2d at 1012.

Accordingly, the Court had already ruled, in allowing Petitioner's motion for a new trial, that Petitioner's retrial was not barred by double jeopardy. Thus, Petitioner's counsel was not ineffective for seeking to raise an issue that was a sure loser based upon binding precedent, including this Court's previous ruling.

### 2. Breach of Agreement

 Likewise, the Court finds that Petitioner's counsel was not ineffective for deciding not to file a motion to dismiss the Indictment based upon the Government's breach of its agreement with him. As the Court explained *supra*, Petitioner suffered no prejudice by signing the stipulations because, even had Petitioner not signed the stipulations, the Government would have been able to present evidence supporting the facts agreed to therein. Even today, Petitioner does not allege that the firearm and ammunition did not travel across state lines, nor does he now claim that he was not a convicted felon at the time of his Indictment. As for the stipulation regarding the gun's capacity to fire, the Court has advised Petitioner in an earlier Order that the Government was not required to prove beyond a reasonable doubt that the gun worked in order for the jury to find him guilty of violating 18 U.S.C. § 922(g). *See United States v. Buggs*, 904 F.2d 1070, 1075 (7th Cir.1990), *quoting United States v. Polk*, 808 F.2d 33, 34 (8th Cir.1986) (internal citations and footnotes omitted and holding that "we cannot accept Mr. Buggs' claim that the government is required to prove that the

gun was operable. 'The statute does not require that the Government prove the gun was actually capable of firing. Rather, it is enough that the gun was 'designed to' fire.' ''); *see also United States v. Ruiz*, 986 F.2d 905, 910 (5th Cir.1993)(same); *see also United States v. York*, 830 F.2d 885, 891 (8th Cir.1987)(same).

Thus, the stipulations merely saved the juror's and the Court's time by speeding up the trial, and, as explained *supra*, worked to Petitioner's advantage because, by the Government not calling an expert fingerprint witness, Petitioner was able to maintain his theory that the gun at issue was not his but belonged to Frank Jefferson.[6] Accordingly, Petitioner's counsel was not ineffective for failing to file a motion to dismiss based upon the Government's breach of its agreement to tender a fingerprint expert in exchange for his agreeing to sign the four stipulations used at trial.

### 3. Vindictive Prosecution

The Court also explained, *supra*, that Petitioner was not the subject of any vindictive prosecution. Again, a prosecutor's decision to add or dismiss counts from an indictment does not *ipso facto* indicate or substantiate a claim of vindictive prosecution. *Goodwin*, 457 U.S. at 378–80, 102 S.Ct. 2485. Because Petitioner has failed to present any objective evidence of vindictiveness by the Government or its attorney, *O'Hara*, 301 F.3d at 571, the Court finds that Petitioner's counsel was not ineffective for failing to file a motion to dismiss the Indictment based upon his claim of vindictive prosecution.

### 4. Petitioner's Statement

In addition, the Court finds that Petitioner's counsel was not ineffective for fail-

**6.** Again, because Jefferson's fingerprints were not found on the gun either, it would have been difficult for Petitioner to have argued that the gun was Jefferson's, not his, due to the non-existence of Petitioner's fingerprints on the weapon.

ing to file a motion to suppress the statement which he made to the Deputies. As the Government notes, Petitioner continues to this day to deny that he ever made any incriminating statement(s) to the Deputies. Moreover, the Government has attached to its response to Petitioner's § 2255 petition an affidavit from Petitioner's counsel who stated that the defense theory at trial was that Petitioner never made a statement to the Deputies following his arrest. Obviously, Petitioner's counsel cannot be said to have been ineffective for failing to file a motion to suppress a statement which Petitioner contends was never made. *See United States v. Nelson,* 984 F.Supp. 1368, 1372–73 (D.Kan.1997)(holding that counsel was not ineffective for failing to file a motion to suppress a statement which the petitioner claims he never made because the issue was one of credibility which cannot be addressed on a motion to suppress).

■ Furthermore, the Court finds that Petitioner's counsel was not ineffective for failing to file a motion to suppress based upon the alleged inconsistencies in the Deputies' testimony. The Deputies' testimony regarding the placement of the gun in the car, the type of car which Petitioner drove, and how the Deputies' testimony conflicted with the testimony of Jefferson goes to the Deputies' credibility and to the weight which their testimony should be given by the jury. *See Hawk v. Olson,* 326 U.S. 271, 279, 66 S.Ct. 116, 90 L.Ed. 61 (1945)(holding that the determination of credibility is for the trier of fact); *see also Baker v. Pinkston,* 314 F.2d 379, 381–382 (7th Cir.1963)(holding that determination of matters of credibility of witnesses, weight to be given items of evidence, and resolution of conflicting testimony are within exclusive province of jury); *see also United States v. Goode,* 814 F.2d 1353, 1355 (9th Cir.1987) (holding that credibility determinations and resolution of conflicting testimony are within the exclusive

province of the jury); *see also United States v. Beaulieu,* 900 F.2d 1531, 1535 (10th Cir.1990)(noting that "[a]lthough other co-defendants presented conflicting testimony, it is within the exclusive province of the jury to determine the credibility of witnesses at trial."). It does not constitute grounds to exclude or to suppress the Deputies' testimony just because it conflicts with that of the other witnesses. Therefore, the Court finds that Petitioner's counsel was not ineffective for failing to file a motion to suppress his statement or to a motion to exclude the Deputies' testimony.

5. *Pretrial Investigation*

■ The Seventh Circuit has held that "a habeas court cannot even begin to apply *Strickland's* standards to ... a claim [of failing to conduct a proper pretrial investigation] unless and until petitioner makes a 'specific, affirmative showing as to what the missing evidence or testimony would have been.'" *U.S. ex rel. Partee v. Lane,* 926 F.2d 694, 701 (7th Cir.1991), *quoting United States ex rel. McCall v. O'Grady,* 908 F.2d 170, 173 (7th Cir.1990). Thus, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi,* 932 F.2d 643, 650 (7th Cir.1991)(footnotes omitted).

■ In the instant case, Petitioner contends that his counsel should have contacted and interviewed LaDonna Dixon, Joe King, Frank Jefferson, and the Deputies (including Special Agent Morgan Fisher of the Bureau of Alcohol, Tobacco, and Firearms) prior to trial and that, had he done so, he could have filed a motion to sup-

press various pieces of evidence used by the Government to obtain his conviction and that the outcome of his trial would have been different. Although Petitioner's ineffective assistance claim based upon his attorney's failure to conduct a pretrial investigation is a closer question, it, too, ultimately fails.

Although Petitioner claims that it was error for his attorney not to interview Joe King prior to his trial, he has not tendered an affidavit or a verified statement from King as to what King's testimony would have been had Petitioner's counsel contacted him and called him as a witness. *Id.* In fact, Petitioner has not even offered speculation as to what relevant information King might have had about this case. Therefore, Petitioner has not established any prejudice from his counsel's failure to interview King prior to trial.

As for Frank Jefferson and the Deputies, Petitioner need not tender an affidavit from or even speculate about what these individuals would have said because they actually testified at trial. Petitioner does not reveal how his attorney's interviewing these individuals prior to trial would have changed the outcome of the trial or would have assisted him in any way. More specifically, Petitioner has not shown what information would have been revealed prior to trial which was not introduced during the trial from these witnesses' testimony. On the contrary, these individuals testified at trial, and the jury choose to believe the Deputies' testimony over that of Jefferson. *Quilling,* 261 F.3d at 713. Accordingly, the Court finds that Petitioner has not established any prejudice from his counsel's failure to interview Jefferson or the Deputies prior to trial.

That brings us to the testimony of LaDonna Dixon. Petitioner argues that he received ineffective assistance of counsel in that his counsel failed to interview Dixon, failed to call her as a witness, and failed to move to suppress evidence based upon her testimony of his possession of the firearm ammunition which formed the basis for Count II of the Indictment. Petitioner asserts that, had his counsel interviewed Dixon and called her as a witness, she would have informed counsel and the jury that she did not give the Deputies consent to search the residence at 9½ Cahokia Street. Because the Deputies did not have consent to search the house, Petitioner contends that the search was illegal, that the evidence obtained from the search should have been suppressed as fruit of the poisonous tree, and that he received ineffective assistance of counsel based upon his counsel's failure to move for suppression of the evidence based upon the Deputies' violation of the Fourth Amendment. Petitioner has attached to his § 2255 petition an "affidavit" from Dixon in which she claims that she did not give the Deputies consent to search the residence.

The Government argues that the Court should not consider Dixon's affidavit because it is not notarized, nor has it been signed under penalty of perjury. Therefore, the Government claims that the affidavit is highly suspect and should be disregarded by the Court.

Nevertheless, the Government asserts that, even if the Court considers Dixon's affidavit, the Court should deny Petitioner's § 2255 petition because Petitioner has no standing to invoke the privacy and Fourth Amendment rights of Dixon. The Government contends that Fourth Amendment rights are personal and that Petitioner may not rely upon Dixon's alleged Fourth Amendment violation in order to suppress evidence obtained which incriminates him.

In any event, the Government argues that Petitioner's counsel was not ineffective for failing to call Dixon as a witness or

to file a motion to suppress based upon her testimony because it was contrary to Petitioner's defense theory. The Government claims that Petitioner's defense theory was that he was merely visiting Dixon and that he did not have any possessions stored at her residence, including the ammunition found therein. Because, according to him, Petitioner did not reside there or have any interest in the possessions in the house, the Government argues that there was no need to call Dixon as a witness or to file a motion to suppress based upon her testimony. The Government has tendered the affidavit of Petitioner's counsel which supports the Government's recitation of Petitioner's defense theory at trial.

The Seventh Circuit has held that " '[a] lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review.' " *Valenzuela v. United States,* 261 F.3d 694, 699–700 (7th Cir.2001), *quoting United States v. Williams,* 106 F.3d 1362, 1367 (7th Cir. 1997). Moreover, the Seventh Circuit

> has frequently considered whether and under what circumstances counsel's failure to call ... witnesses to testify amounts to ineffective assistance of counsel. *See, e.g., United States v. Olson,* 846 F.2d 1103 (7th Cir.1988); *Sullivan v. Fairman,* 819 F.2d 1382 (7th Cir.1987). These decisions recognize that once defense counsel conducts a reasonable investigation into all lines of possible defenses, counsel's strategic choice to pursue one line to the exclusion of others is rarely second-guessed on appeal. An appellate court will review an ineffective assistance of counsel ground only if counsel's conduct or decision was not made 'in the exercise of reasonably professional judgment.' *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. *See also United States ex rel. Robinson v. Pate,* 312 F.2d 161, 162 (7th Cir.1963)(counsel not ineffective because strategic choice was one about which

competent attorneys might honestly disagree). The appellate court will make "every effort ... to eliminate the distorting effects of hindsight" ... and must apply a "heavy measure of deference to counsel's judgment." *Sullivan,* 819 F.2d at 1391 (*quoting Strickland,* [466 U.S.] at 689, 691, 104 S.Ct. at 2065, 2066).

Balzano alleges that his trial counsel should have called witnesses whom Balzano felt could have impeached government witnesses on matters collateral to the litigation. We remind Balzano that when an attorney in the course of a trial makes "[s]trategic choices ... after thorough investigation [they] are virtually unchallengeable." *Sullivan,* 819 F.2d at 1391 (*quoting Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2065–66). "[T]rial counsel [need not] track down every lead or ... personally investigate every evidentiary possibility before choosing a defense and developing it." *Id.* at 1392. The Constitution does not oblige counsel to present each and every witness that is suggested to him. In fact, such tactics would be considered dilatory unless the attorney and the court believe the witness will add competent, admissible and non-cumulative testimony to the trial record.

*United States v. Balzano,* 916 F.2d 1273, 1294 (7th Cir.1990).

In the present case, the Court finds that Petitioner's counsel's decision not to call Dixon as a witness or to file a motion to suppress based upon her testimony was within the bounds of professional judgment and were reasonable trial strategy decisions. At trial, Petitioner and his counsel decided to try to convince the jury that he was merely visiting Dixon at *her* residence at 9½ Cahokia Street. Petitioner noted that Dixon's was the only name on the lease and that the Government had failed to present any evidence regarding how long he had been at Dixon's house prior to

the Deputies' arrival. Had Petitioner been successful in convincing the jury that he did not reside with Dixon and that he was merely a temporary visitor at her abode, he probably also would have been able to convince the jury that he did not possess (either actually or constructively) the firearm ammunition found in the house's bedroom.

■ Although Petitioner was ultimately unable to persuade the jury to believe his defense, *Quilling*, 261 F.3d at 712–13, that does not mean that his counsel was ineffective for presenting it to the jury. The presentment of this defense also meant that Petitioner's counsel was correct in his decision not to call Dixon as a witness.[7] Because (according to him) he was merely a temporary visitor at Dixon's home, Petitioner did not have any Fourth Amendment basis upon which to challenge the search of Dixon's home even assuming, *arguendo*, that Dixon did not give the Deputies consent to search the house.[8]

"[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; ... the Fourth Amendment is a personal right that must be invoked by an individual." *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998); *see Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)(holding that the "capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place."); *see also Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)(noting that "the Fourth Amendment protects people, not places."). The Supreme Court has held that an individual "who is merely present with the consent of the householder may not" claim the protections of the Fourth Amendment. *Carter*, 525 U.S. at 90, 119 S.Ct. 469; *see Terry v. Martin*, 120 F.3d 661, 663–64 (7th Cir. 1997) (noting that temporary visitors do not have Fourth Amendment "standing" to challenge a search of a residence because they do not have a legitimate expectation of privacy at the residence); *see also United States v. Gamez–Orduno*, 235 F.3d 453, 458 (9th Cir.2000)(holding that "[a]n individual whose presence on another's premises is purely commercial in nature ... has no legitimate expectation of privacy in that location."). Therefore, because Petitioner claimed to be merely present in Dixon's home, he cannot claim the Fourth Amendment's protections against unreasonable searches, and he cannot challenge the Deputies' search of Dixon's home even assuming that she did not give them consent to search it.

Ironically, had Petitioner admitted that 9½ Cahokia Street was his address or, at least, that he was a frequent overnight guest of Dixon's, as the Deputies testified,[9]

---

7. Petitioner has not presented any evidence that his counsel failed to conduct an adequate pretrial investigation. On the contrary, according to their affidavits, Petitioner asked his attorney to call Dixon as a witness, and his counsel refused because her testimony had the potential of undermining their defense theory.

8. In addition, had Petitioner's counsel called Dixon as a witness, she could have undermined his defense. For example, Dixon could have acknowledged that she gave the Depu-

ties her consent to search the house, or she could have informed the jury that Petitioner lived with her.

9. Deputy Marshal Sean Newlin testified that 9½ Cahokia was a "known address" for Petitioner, that his vehicle was parked in the house's driveway earlier and at the time when the Deputies went to arrest him, and that, when asked by Deputy Newlin who lived at the house, both Petitioner and Dixon replied, "We do." *Quilling*, 261 F.3d at 712–13.

he would have had a Fourth Amendment basis to challenge the search. The Supreme Court has opined that overnight guests in a house have a legitimate expectation of privacy which the Fourth Amendment protects:

> To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the every day expectations of privacy that we all share. Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society. We stay in others' homes when we travel to a strange city for business or pleasure, when we visit our parents, children, or more distant relatives out of town, when we are in between jobs or homes, or when we house-sit for a friend. . . .
>
> From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside. We are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings. It is for this reason that, although we may spend all day in public places, when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend.

*Minnesota v. Olson*, 495 U.S. 91, 98–99, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). Thus, "[a]lthough an overnight guest may possess a legitimate expectation of privacy in a residence being searched, a temporary visitor to a residence may claim no such protection." *United States v. Harris*, 255 F.3d 288, 294–95 (6th Cir.2001); *see United States v. Perez*, 280 F.3d 318, 337 (3d Cir.2002) (holding that "[a]lthough overnight guests who are legitimately in a third-party's apartment may have a reasonable expectation of privacy, Appellants [who were in another's apartment to engage in drug-related activities] do not qualify.").

However, even today, Petitioner claims in his affidavit that he was merely "visiting" Dixon. Thus, it was not objectively unreasonable for Petitioner's counsel not to file a motion to suppress based upon Dixon's testimony, nor was it outside the bounds of professional judgment not to tender her as a witness during the trial. In fact, to do so would have run counter to the defense's theory of the case. Accordingly, the Court finds that Petitioner did not receive ineffective assistance of counsel in violation of his Sixth Amendment rights.

Finally, the Court notes that letting Petitioner's convictions and sentence stand would not result in a fundamental miscarriage of justice. *Carrier*, 477 U.S. at 495, 106 S.Ct. 2639.

*Ergo*, Petitioner's petition pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence is DENIED.